## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ANU OTARO IRU'PA**, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 25-cv-03731 (TSC) |
| **U.S. DEPARTMENT OF COMMERCE**, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

### MEMORANDUM OPINION

Plaintiff Anu Otaro Iru'pa, proceeding *pro se*, sues a long list of Defendants, including the U.S. Department of Commerce, the U.S. Census Bureau, and Commerce Secretary Howard Lutnick (collectively, "Federal Defendants"), the states of Texas and Louisiana, several state agencies, and numerous state officials (collectively, "State Defendants"), judicial officers, court staff, and police departments, hospitals and other medical service providers, child welfare services organizations, and "John Does 1-50." *See* Compl. ¶¶ 8–32, ECF No. 1. His Complaint alleges various combinations of claims under the Administrative Procedure Act ("APA"), *id.* ¶¶ 47–49, 60–62, the Alien Tort Statute ("ATS"), *id.* ¶¶ 50–59, 65–66, 74, as well as international law and norms, *id.* ¶¶ 67–68, 71, 73. Plaintiff also appears to bring several embedded constitutional claims, *id.* ¶¶ 60–64, 69–70, 75–76, 79, as well as general *ultra vires* claims, *id.* ¶¶ 77–83. Plaintiff has filed several—often incoherent—motions, and nearly all Defendants have moved to dismiss Plaintiff's claims. *See* ECF Nos. 12, 25, 27, 29, 31, 38, 42, 49, 57, 63. For the reasons below, the court will GRANT those motions, sua sponte DISMISS the Complaint against all other Defendants, and DENY AS MOOT all remaining motions.

### I.    BACKGROUND

Page **1** of **11**

Plaintiff claims that he and his son are citizens of the Maipuri Arauan Nation ("MAN"), which he characterizes as a sovereign Indigenous group. Compl. ¶ 7. Despite this claimed status, relevant federal and state agencies and officials have purportedly refused to recognize Plaintiff's "Aboriginal" identity, his membership in MAN, or MAN's sovereign status. *Id.* ¶¶ 40–43. While it is difficult to discern the precise nature of Plaintiff's grievances, the crux of his Complaint focuses on the medical treatment of his son at a Texas hospital and his son's later removal into state custody. *See id.* ¶¶ 3–6. Specifically, Plaintiff alleges that his son was born prematurely at his home in Texas on January 6, 2024, and taken to the Medical City Arlington Hospital in Arlington, Texas, shortly thereafter. *Id.* ¶ 3; Pl.'s Notice of Exhibits, ECF No. 3, at 3–5, 6. According to the Complaint, hospital staff fed Plaintiff's son a recalled brand of infant formula without parental consent and against Plaintiff's religious beliefs and directives. Compl. ¶¶ 4–5, 34. After the child suffered from digestive distress, Plaintiff and the child's mother "persisted in refusing Similac" and requested alternative care "consistent with their faith and tribal directives." *Id.* ¶¶ 4–5, 35.

Plaintiff alleges that almost a year and a half later, in June of 2025, armed officers from Dallas County, Texas accompanied Texas Department of Family and Protective Services agents to his home and forcibly removed his son, transported the family to Children's Medical Center Dallas, and "obstructed parental access and decision-making." *Id.* ¶¶ 5, 35–36; Pl.'s Notice of Exhibits at 8. In his Notice of Exhibits, Plaintiff asserts that these officials invoked a back-dated ex parte Removal Order and suggests that their "neglect" finding was based on "hearsay, junk science, and unverified opinion." Pl.'s Notice of Exhibits at 8. Plaintiff further alleges that this separation continues and that "the child has faced invasive procedures," including scheduled surgery to cure an ear infection he purportedly acquired in DFPS custody, all without a "valid order" or "warrant." Compl. ¶¶ 5, 36–38; Pl.'s Notice of Exhibits at 8–10.

From what the court can glean, Plaintiff's claims generally fall within three, often overlapping buckets: (1) claims challenging various Defendants' purported misclassification of Plaintiff and his son's racial designations across vital records and refusal to recognize their claimed status as MAN members, *see* Compl. ¶¶ 47–49, 53–57, 60–68, 75–76; (2) claims asserted under the ATS for violations of federal and internal laws and doctrines, *see id.* ¶¶ 50–59, 65–66, 71, 74; and (3) claims asserted against Texas officials and Judge Shannon relating to the removal of Plaintiff's son and related child custody proceedings, *see id.* ¶¶ 69–71, 77–79, 80–83. Plaintiff seeks, among other forms of relief, "immediate declaratory and injunctive relief compelling the return" of his son, "damages against individual state and private actors for non-privileged, ultra-vires conduct violating specific, universal, and obligatory norms recognized under the Alien Tort Statute," as well as a declaration that MAN's membership determinations may not be disregarded by state actors, and related equitable relief directing recognition of MAN and Plaintiff's purported status in it. *Id.* ¶¶ 1–2; *see also id.* at 18–19.

## II.    LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff "bears the burden of demonstrating subject matter jurisdiction." *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff is unable to do so, the court must dismiss the action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Both a lack of Article III standing and sovereign immunity are grounds for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *Geronimo v. Obama*, 725 F. Supp. 2d 182, 185 (D.D.C. 2010).

Under Rule 12(b)(3), the court may "dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum." *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 21 (D.D.C. 2009); *see* Fed. R. Civ. P. 12(b)(3).  While courts accept a plaintiff's well-pleaded allegations regarding venue as true and must draw all reasonable inferences from those allegations in the plaintiff's favor, they need not "accept the plaintiff's legal conclusions as true . . . and may consider material outside of the pleadings." *Abraham v. Burwell*, 110 F. Supp. 3d 25, 28 (D.D.C. 2015) (citation modified).  "The plaintiff has the burden to establish that venue is proper since it is his obligation to institute the action in a permissible forum." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020) (citation modified), *aff'd*, No. 20-cv-05103, 2021 WL 2525679 (D.C. Cir. June 2, 2021).

Under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Dismissal under Rule 12(b)(6) is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under both Rule 12(b)(1) and 12(b)(6), a court must accept all well-pleaded factual allegations in the complaint as true.  *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  "Because the court has 'an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority,' however, the factual allegations in the complaint 'will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Nat'l Ass'n for Latino Cmty. Asset Builders v. CFPB*, 581 F. Supp. 3d 101, 104 (D.D.C. 2022) (quoting *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)).

"The pleadings of pro se parties are to be 'liberally construed,' and a pro se complaint, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

Page **4** of **11**

by lawyers.'" *James v. United States*, 48 F. Supp. 3d 58, 63 (D.D.C. 2014) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates,* 658 F. Supp. 2d 135, 137 (D.D.C. 2009). Indeed, "even a pro se plaintiff must meet his burdens of proving subject matter jurisdiction and stating a claim for relief." *James*, 48 F. Supp. 3d at 63. Moreover, a district court "may sua sponte dismiss a claim pursuant to Rule 12(b)(6) without notice where it is 'patently obvious' that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." *Jafari v. United States*, 83 F. Supp. 3d 277, 279 (D.D.C. 2015) (quoting *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012)), *aff'd*, 621 F. App'x 676 (D.C. Cir. 2015); *see also Tate v. Burke*, 131 F.R.D. 363, 365 (D.D.C. 1990) (courts may act sua sponte when the complaint "indisputedly" contains "no factual and legal basis for the asserted wrong").

### III.    ANALYSIS

At the outset, the court notes that Plaintiff has failed to allege any concrete harm that is fairly traceable to his claims regarding racial misclassification for the purpose of satisfying Article III standing. *See* Compl. ¶¶ 47–49, 53–57, 60–68, 75–76. It is well established that plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek" by alleging "a concrete and particularized injury caused by the defendant and redressable by the court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 423 (2021). The only cognizable injuries Plaintiff alleges relate to his son's medical treatment and the actions taken by Texas's child welfare services to remove his son and initiate child custody proceedings. *See* Compl. ¶¶ 5–6, 34–43. These allegations, however, have no discernable connection to Plaintiff claims regarding Defendants' failure to acknowledge his and his son's claimed status as members of MAN.

To the extent Plaintiff offers other allegations of harm stemming more directly from his misclassification claims, his conclusory, and largely implausible, assertions regarding "denial of

governmental access," "travel interference," and "obscur[ing]" his claimed "Indigenous ancestry and political identity," Compl. ¶¶ 41, 43, will not suffice, even under the more lenient pleading standard for *pro se* plaintiffs. *See Brown v. FBI*, 793 F. Supp. 2d 368, 378 (D.D.C. 2011) ("[C]onclusory allegations of injury . . . are insufficient to meet the plaintiff's burden of alleging an injury in fact that is concrete and particularized." (citation modified)); *James*, 48 F. Supp. 3d at 63. Indeed, several courts in this district have recently rejected nearly identical assertions of harm raised by other purported MAN members challenging alleged racial misclassifications. *See, e.g.*, *Tahuti v. U.S. Dep't of Com.*, No. 24-cv-2003, 2025 WL 2206939, at *5 (D.D.C. Aug. 4, 2025) (finding no cognizable injury in Plaintiff's allegations that misclassification "caused [him] to be denied his indigenous identity," "excluded [him] from tribal rights," and "subjected [him] to systemic discrimination"); *Xelup v. Dep't of Com.*, No. 24-cv-1241, 2025 WL 785218, at *1–2 (D.D.C. Mar. 12, 2025) (determining that another MAN member lacked standing to challenge, *inter alia*, the government's alleged "identity fraud" and infringement on his "right to movement"); *Angeni v. U.S. Dep't of Com.*, 24-cv-2006, 2024 WL 4582972, at *2 (D.D.C. Oct. 25, 2024) (no standing where MAN member failed to allege any "concrete harm [that] followed from the Census Bureau's misclassification of her").[1]

As for Plaintiff's other claims under the ATS, *see* Compl. ¶¶ 50–59, 65–66, 71, 74, sovereign immunity bars his requests for damages against the Federal Defendants and state officials sued in their official capacities and precludes his ATS claims in their entirety against

---

[1] To the extent Plaintiff suggests that Defendant Louisiana Department of Health "entrench[ed]" their alleged misclassification of Plaintiff's race through their "reporting to federal agencies," Compl. ¶ 43, this claim is too conjectural to support a finding of injury based on the dissemination of erroneous information to third parties. *See TransUnion LLC*, 594 U.S. at 434 (explaining that the "'mere existence of inaccurate information, absent dissemination, [does not] amount[] to concrete injury'"). And, in any event, as explained below, this Defendant enjoys immunity from Plaintiff's suit.

Texas, Louisiana, and their respective state agencies.  Sovereign immunity is jurisdictional and protects the federal government, its agencies, and its employees acting in their official capacities from suit.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  The same is true for states, their agencies, and state officials acting in their official capacities, unless the state has waived its immunity or Congress has abrogated it.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70 (1999); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  While the APA provides for a limited waiver of federal sovereign immunity for prospective non-monetary relief, *see* 5 U.S.C. § 702, and *Ex parte Young* permits suits for the same relief against state officials when those officials are allegedly violating federal law, 209 U.S. 123 (1908), the D.C. Circuit has repeatedly affirmed that the ATS itself "does not provide a waiver of sovereign immunity."  *Industria Panificadora, S.A. v. United States*, 957 F.2d 886, 887 (D.C. Cir. 1992).  Accordingly, this court lacks jurisdiction over Plaintiff's ATS claims against each of the State Defendants as well as claims for damages against the Federal Defendants and state officials sued in their official capacities.

In addition, this court lacks jurisdiction to hear Plaintiff's ATS claims against the remaining Defendants.  The ATS permits "any person [who is] not a citizen or national of the United States," *Jerez v. Republic of Cuba*, 777 F. Supp. 2d 6, 19 n.23 (D.D.C. 2011), *aff'd*, 775 F.3d 419 (D.C. Cir. 2014), to file suit in federal district courts for torts "committed in violation of the law of nations or a treaty of the United States," 28 U.S.C. § 1350.  Plaintiff's Complaint and attached exhibits, however, indicate that Plaintiff was born in Louisiana and currently resides in Texas.  *See* Compl. ¶ 43; Pl.'s Notice of Exhibits at 8.  And it is undisputed that Plaintiff's son was born in Texas.  Pl.'s Notice of Exhibits at 3–4, 61.  Consequently, neither Plaintiff nor his son are non-citizens, *see* U.S. Const., amend. XIV § 1; 8 U.S.C. § 1401(a)–(b), and thus may not invoke the ATS's jurisdictional provisions, *see* 28 U.S.C. § 1350.  Plaintiff nonetheless insists he is a

"non-U.S. national for ATS purposes," Compl. ¶ 55; *see also* Pl.'s Notice of Exhibits at 13, but Plaintiff does not allege that he has fulfilled the statutory requirements for renunciation, *see* 8 U.S.C. § 1481(a), and "membership in the Maipuri Arauan Nation [does not] make him an 'alien'" under the statue. *Ympoka v. U.S. Dep't of Interior*, No. 24-cv-2000, 2025 WL 2029763, at *3 (D.D.C. July 21, 2025) (citing 28 U.S.C.§ 1350).

Moreover, even if Plaintiff could sue under the ATS, many of his claims are "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v. Lavine*, 415 U.S. 528, 536 (1974) (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)). The same goes for his non-ATS claims based on the Genocide Convention, codified at 18 U.S.C. § 1091. *See* Compl. ¶¶ 72–74. Indeed, courts in this district have determined that they lack jurisdiction over similar claims to those alleged here, including "allegations that Defendants have committed crimes against humanity, racial apartheid, identity erasure, ethnic cleansing, forced nationality, and constructive fraud." *Akansa v. Dep't of Com.*, No. 25-cv-505, 2025 WL 3265192, at *4 (D.D.C. Nov. 24, 2025); *see also Ympoka*, 2025 WL 2029763, at *1, 4 (finding court lacked jurisdiction over a *pro se* complaint filed by asserted member of MAN who alleged United States and its actors were "'systemically forcing fraudulent identity' on him so they can improperly detain him."); *Tahuti*, 2025 WL 2206939, at *7 (finding no jurisdiction over a purported MAN's member's claims that Defendants had committed "crimes against humanity" or have committed acts that constitute a "breach of jus cogens norms").

Plaintiff's assertions that Defendants committed "invasion of sovereignty," "cruel/inhuman treatment," "religious persecution," "forced identity," "corruption of blood," "constructive denationalization," and "constructive genocide," Compl. ¶¶ 52, 54–56, 65–66, 67–68, 72–74, all fall squarely within the realm of patently "devoid of merit." *Hagans*, 415 U.S. at 536. And "[e]ven if the court were to reach the merits of these claims, it would conclude that

Plaintiff failed to satisfy Federal Rules of Civil Procedure 8(a) and 12(b)(6) because [he] has not alleged specific facts sufficient to provide adequate notice of the operative facts and [his] entitlement to relief." *Akansa*, 2025 WL 3265192, at \*4 (citing *Iqbal*, 556 U.S. at 678).  Indeed, MAN is neither a federally nor state recognized Indian Tribe or Alaska Native entity, but rather "a recently formed organization that carries no legal significance." *Ympoka*, 2025 WL 2029763, at \*3.  Thus, Plaintiff's reliance on principles and precedents of "federal Indian-law recognizing tribal self-government," Compl. ¶ 63; *see also id.* ¶¶ 61–62, 68, are misplaced.

As for Plaintiff's claims asserted against Texas officials and Judge Shannon for the removal of his son and subsequent court proceedings, *see* Compl. ¶¶ 69–71, 77–79, 80–83, it is clear from the Complaint that this court is not the proper venue in which to adjudicate those claims.  While it is true that the venue statute permits plaintiffs to bring suits against federal defendants in any district where "a defendant in the action resides," 28 U.S.C. § 1391(e)(1), additional parties may only be joined under § 1391(e)(1) if venue would be proper absent the federal defendants.  Plaintiff invokes § 1391(b) as his saving provision, but § 1391(b) requires that "a substantial part of the events or omissions giving rise to the claim occurred" in the chosen judicial district.  In Plaintiff's own words, however, "[t]his action arises from" his son's medical treatment at hospitals in the Dallas area, removal by child welfare agents in Dallas County, and subjection to ongoing custody proceedings in a Dallas County juvenile court.  Compl. ¶¶ 3–5, 35–36; Pl.'s Notice of Exhibits at 6–10.  Because each of the relevant events underlying Plaintiff's claims against the non-federal Defendants occurred outside of D.C., venue is not proper under § 1391(b)(2), and the court is not aware of any other provision under which venue would be appropriate in this district.

Where venue is improper, "[t]he decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).  Although courts generally "favor transfer over

dismissal" of cases brought by *pro se* plaintiffs, *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009), the court will dismiss the remaining claims, *see* Compl. ¶¶ 69–71, 77–79, 80–83, because they are barred by applicable immunity and abstention doctrines.  For one, Judge Shannon is "absolutely immune from damages suits over actions taken in a judicial capacity," *Xelup*, 2025 WL 785218, at *4 (citations omitted), and federal district courts "generally lack[] appellate jurisdiction over other judicial bodies, and cannot exercise appellate mandamus over other courts," *United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011), which is precisely what Plaintiff asks this court to do, *see* Compl. ¶¶ 80–83 (seeking a "declaration that juvenile-court orders are void; injunction prohibiting further proceedings in that forum; transfer to a court of lawful jurisdiction (if any), with immediate restoration of custody pending adjudication").

The same is true of Plaintiff's claims against the court clerk for "docket fraud" and "ministerial breach," *see Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (explaining that judicial immunity extends to court clerks "for performance of tasks that are an integral part of the judicial process."); Compl. ¶¶ 77–79.  Finally, Plaintiff's claim against unnamed Texas Department of Family and Protective Services agents and Dallas County officials for the immediate return of his child, Compl. ¶¶ 69–71, falls squarely within "the province of custody proceedings in a properly situated State court, over which this Court cannot exercise jurisdiction and compel it to act." *Irako Ja Kongari v. U.S. Dep't of Com.*, No. 25-cv-04575, 2026 WL 1533290, at *2 (D.D.C. June 1, 2026) (citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, ECF Nos. 12, 25, 27, 29, 31, 38, 42, 49, 57, 63, are GRANTED.  The court will sua sponte DISMISS the Complaint against all other Defendants and DENY all remaining motions as moot.  A separate order will follow.

Date:  July 9, 2026

_Tanya S. Chutkan_
TANYA S. CHUTKAN
United States District Judge